CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

June 10, 2026

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 1:21CR00037-001 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| ALONSO CANTU-CANTU, ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

*S. Cagle Juhan, Assistant United States Attorney, Charlottesville, Virginia, for United States; Alonso Cantu-Cantu, Pro Se Defendant.*

Alonso Cantu-Cantu, previously sentenced by this Court, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (2255 Motion).  The government has moved to dismiss and upon careful consideration of the record, I will grant the government's motion and dismiss the 2255 Motion.

## I.  BACKGROUND.

On March 30, 2023, a jury convicted Cantu-Cantu of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more, but less than five kilograms, of cocaine in violation of 21 U.S.C. §§ 841(a)(1), -(b)(1)(A)(viii), -(b)(1)(B)(ii), and 846.  The jury failed to reach a verdict regarding two other counts and a mistrial was declared as to those counts.  The government subsequently agreed to dismiss those charges.  Cantu-Cantu was

sentenced to 300 months of imprisonment and five years of supervised release. He appealed his sentence, and the court of appeals affirmed the judgment. *United States v. Cantu-Cantu*, No. 23-4526, 2024 WL 3666170, at *1 (4th Cir. Aug. 6, 2024) (unpublished).

Cantu-Cantu signed and dated this 2255 Motion on September 25, 2025. He alleges that his counsel provided ineffective assistance during his trial on nine grounds. The matter has been fully briefed and for the following reasons, I will deny the 2255 Motion.

## II.  STANDARD OF REVIEW.

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

For an ineffective-assistance-of-council claim to prevail, the defendant must demonstrate that (i) counsel's performance failed to satisfy an objective standard of reasonableness, and (ii) with reasonable probability, that but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id.* at 688, 694. Counsel generally enjoys a strong presumption that alleged errors were

part of a sound trial strategy. *United States v. Cathorne*, 878 F.3d 458, 469 (4th Cir. 2017) (internal citations omitted). An attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective-assistance-of-counsel claim. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

### III. SUFFICIENCY OF THE ALLEGATIONS.

Cantu-Cantu alleges that his counsel was ineffective in failing to move for a judgment of acquittal, failing to impeach or cross-examine key witnesses, failing to challenge evidence regarding the purity of the methamphetamine at issue, failing to object to drug testing stemming from the counts on which the jury did not reach a verdict, and failing to advise him regarding a plea agreement. He also alleges that the cumulative error doctrine warrants reversal. For the following reasons, these claims all fail.

### A. Claim I: Failure to Contest Deadlocked Jury Counts.

Cantu-Cantu contends that his counsel should have objected to a partial verdict in light of the jury's deadlock. The jury told the Court that it had agreed to a guilty verdict as to Count One but could not come to an agreement regarding two remaining counts, Counts Eight and Nine. Initially, counsel requested an *Allen* charge to encourage the jurors to reach unanimity. However, the Court declined to give the charge and instructed the jury that it could return a partial verdict.

District courts have the legal authority to accept a partial verdict in criminal cases involving multiple counts against a single defendant. *United States v. Taylor*, 19 F. App'x 62, 65 (4th Cir. 2001) (unpublished). Alternatively, counsel may seek unanimity from the jury on the hung counts. Courts have noted the potentially coercive effect *Allen* charges can have on deliberations, due to implicit pressure to reach consensus, and have accordingly imposed constraints on their application. *See, e.g.*, *Tucker v. Catoe*, 221 F.3d 600, 611 (4th Cir. 2000) (employing a multi-factor analysis to evaluate the coerciveness of an *Allen* charge). Thus, when confronted with a partial verdict, defense counsel must assess the strength of the case against the defendant and the likelihood of favorable unanimity before moving to issue an *Allen* charge to the jury.

The decision whether to contest a partial verdict, particularly through an *Allen* charge, falls under trial strategy. This is because *Allen* charges can achieve either an adverse or favorable result for a defendant, by encouraging jurors to reach unanimity rather than a specific outcome. It would not have been ineffective of counsel to forgo the request. In any event, here, counsel did request an *Allen* charge, which was declined. He was under no professional obligation to pursue the point further.

B. Claim II: Failure to Move for Judgment of
Acquittal Following Dismissal of Counts.

Cantu-Cantu also alleges that counsel was ineffective when he failed to move for a judgment of acquittal on Counts Eight and Nine after the guilty verdict on Count One. Instead, the government moved to dismiss the counts and the court granted the motion.

An attorney's failure to raise meritless arguments cannot form the basis of a successful ineffective-assistance-of-counsel claim. *Kimler*, 167 F.3d at 893. A court need not examine both prongs of the *Strickland* standard if it conclusively fails on one. *See United States v. Singleton*, 624 F. Supp. 2d 520, 529 (W.D. Va. 2009) (holding that the court need not reach the second ground of the *Strickland* test where counsel's actions have been found not to be unreasonable).

As the government concedes, the absence of judgment of acquittal meant that Counts Eight and Nine were dismissed without prejudice, rather than with prejudice. In any event, Cantu-Cantu has not suffered any disadvantage because the government has not brought the dismissed counts again and there is no evidence that it will. In both circumstances, Cantu-Cantu was not charged with Counts Eight or Nine, which is a favorable outcome for him. Counsel's alleged failure to move for a judgment of acquittal, therefore, did not prejudice Cantu-Cantu.

-5-

### C.  Claims III and IV: Failure to Challenge
### Credibility of Witnesses.

Cantu-Cantu contends that counsel failed to cross-examine two key witnesses, Amber Lynn Tackett and Daniel Rosa-Suarez.  In fact, defense counsel vigorously cross-examined both witnesses at length.

Under the prejudice prong of the *Strickland* analysis, where a petitioner asserts that counsel failed to introduce evidence or challenge the credibility of government witnesses on cross-examination, three factors are examined: "first, the strength of the prosecution's case; second, the effectiveness of the defense that was presented at trial; third, the potential value of the new evidence and new avenues for cross-examination 'in undermining the credibility of the government witnesses' testimony.'"  *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citations omitted).

In his cross-examination, defense counsel attempted to discredit the witnesses based on their previous convictions, efforts to avoid law enforcement, and potential incentives for their testimony.  Counsel is not constitutionally deficient simply because there are some questions or lines of inquiry he did not pursue.  Therefore, Claims III and IV are not valid.

### D.  Claim V: Confrontation Clause Violation
### Regarding Drug Analysis Evidence.

Cantu-Cantu alleges his counsel was ineffective because he did not call the chemists who conducted the drug purity testing to testify.  Instead, counsel stipulated to the admission of lab certificates.  Cantu-Cantu contends that their failure to testify is a Confrontation Clause violation that counsel failed to address.

In *United States v. Goodlow,* a defendant claimed that a Confrontation Clause violation occurred because he did not have an opportunity to cross-examine the chemists who performed testing on a drug sample.  389 F. App'x 961, 966 (11th Cir. 2010).  Instead, his attorney stipulated to the lab reports.  *Id.*  The court found no Confrontation Clause violation, explaining that the defendant "had every opportunity to object to the admittance of the lab results and demand that the lab technician testify" but "his counsel made a seemingly strategic decision to stipulate." *Id.* at 967.

Here, counsel similarly could have required the technicians to testify, but made a decision to stipulate to the admissibility of the lab reports.  There is thus no violation of the Confrontation Clause.  Further, as discussed above, the strategic decisions of counsel are afforded deference.  The chemists who performed the tests likely would have testified to the same facts contained in their reports.  Therefore, it is within counsel's professional judgement not to waste time or belabor a point with the jury that is unlikely to help his client's case.  Accordingly, Claim V lacks merit.

E.   Claim VI: Failure to Seek Independent Forensic Testing.

In a related claim to Claim V, Cantu-Cantu contends that his counsel should have sought independent testing of the drug sample.  In *Holdren v. Legursky*, the court of appeals determined that there was no ineffective-assistance-of-counsel claim where an expert in the relevant field of forensics has conducted a test on a given sample and defense counsel failed to have an independent qualified expert perform a separate forensic analysis.  16 F.3d 57, 63 (4th Cir. 1994).  Further, failure to request independent testing is not ineffective assistance of counsel where the outcome of the testing would not have changed the jury verdict.  *LaPointe v. Oliver*, 807 F. App'x 770, 782 (10th Cir. 2020) (unpublished).

The chemists who tested the sample here are experts in drug purity testing. Furthermore, the purity of the drugs did not affect the jury verdict, but only the final sentencing determination, which fell within the range permitted by the sentencing guidelines for the convicted offense. Thus, counsel's decision not to request independent testing was neither professionally deficient nor prejudicial.

F.   Claim VII: Failure to Challenge Presentence
Report's Drug Quantity Findings.

Cantu-Cantu argues that counsel failed to object to a drug weight at sentencing that was greater than the drug weight determined in the jury's verdict.  As the government indicates, this claim appears to convey a misunderstanding of the standard of proof required at criminal trials versus at sentencing.

-8-

At trial, the jury was tasked with finding drug quantity beyond a reasonable doubt. The jury's finding concerning drug quantity established a maximum sentence that could be imposed. That said, it did not constrain the kind of evidence that could be considered by the Court at sentencing. Instead, at sentencing, the relevant standard regarding drug quantity is by a preponderance of the evidence. Thus, the Court can consider evidence that is indicative of drug quantity under a lower standard of proof at sentencing. It is therefore not contradictory for a drug quantity finding in the pesentence report to exceed the drug quantity determined by the jury.

### G. Claim VIII: Failure to Preserve Objections and Present Mitigation Evidence.

Cantu-Cantu also takes issue with the type of arguments his counsel chose to advance at sentencing. Cantu-Cantu argues that counsel should have raised policy contentions regarding the guidelines for methamphetamine and sentencing disparity issues. First, "[i]n evaluating trial counsel's performance, we must be highly deferential to counsel's strategic decisions." *McCarver v. Lee,* 221 F.3d 583, 594 (4th Cir. 2000) (citing *Strickland,* 466 U.S. at 689). Furthermore, an "indigent defendant has [no] constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Counsel raised mitigation arguments, particularly with regard to Cantu-Cantu's character as well as his conduct during the legal process. He is not constitutionally ineffective for failing to advance the specific arguments Cantu-Cantu desired.

### H. Claim IX: Failure to Advise on Plea Negotiations and Acceptance of Responsibility.

Cantu-Cantu contends that counsel never advised him of the potential benefits of a guilty plea or the reduction in sentence calculation it could provide.

Today, "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). In general, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. Ineffective-assistance-of-counsel claims arising out of the plea process are subject to the two part test set forth in *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The government contends that plea deals were communicated to Cantu-Cantu on numerous occasions and that he maintained his innocence throughout the process, including at sentencing. At any rate, even assuming these plea deals were not

adequately conveyed to Cantu-Cantu, his claims fail under the second prong of the *Strickland* test.

In *Lafler v. Cooper*, the Supreme Court explained that to surmount *Strickland*'s prejudice requirement, a defendant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 566 U.S. 156, 163–64 (2012).

The Court held a *Lafler* hearing before trial at which the prosecutor detailed the lengthy plea negotiations. Cantu-Cantu told the Court that he had understood the plea offers that the government had made him. He also stated that he understood the sentence cap that a plea agreement would provide and that he still intended to go to trial. Therefore, even if counsel had not thoroughly advised Cantu-Cantu of the plea offers, they were explained to him at his hearing, and he still insisted on going to trial.

Finally, Cantu-Cantu's allegation that counsel gave him imperfect information about sentence calculations or reductions does not state a valid ineffective-assistance-of-counsel claim. A "miscalculation or erroneous sentence

estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Moneymaker*, No. 7:07CR00029-1, 2011 WL 108724, at \*5 (W.D. Va. Jan. 13, 2011) (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)).

Accordingly, Cantu-Cantu has not demonstrated prejudice by his counsel's approach to plea negotiations.

## I.   Claim X: Cumulative Error Doctrine.

Finally, Cantu-Cantu contends that his trial was so unfair as to merit reversal under the cumulative error doctrine.  I disagree.

Under the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)). To invoke the cumulative error doctrine, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004) (internal quotation marks and citation omitted).  When "none of [the] individual rulings work[ ] any cognizable harm, . . . [i]t necessarily follows that the cumulative error doctrine finds no foothold." *Basham*, 561 F.3d at 330 (quoting *United States v. Sampson*, 486 F.3d 13, 51 (1st Cir. 2007)).

Here, none of defense counsel's alleged errors prejudiced the defendant or demonstrated cognizable harm. Accordingly, there is no basis for a claim of cumulative error.

IV. CONCLUSION.

Accordingly, Cantu-Cantu's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 369, will be dismissed. A separate Final Order will be entered herewith.

DATED:   June 10, 2026

/s/  JAMES P. JONES
Senior United States District Judge